May it please the court, my name is Robert Richman. I represent Dr. Elena Polukhin. As part of her criminal sentence in this case, Dr. Polukhin was ordered to pay $421,329 in restitution. That restitution order was illegal because under the Victim Witness Protection Act, the kickbacks for which Dr. Polukhin was convicted were not the direct and proximate cause of the losses suffered by Medicare and Medicaid. Wasn't there a plea agreement here that your client agreed to pay $421,399 and sell her house to do it? And we enforce plea agreement here saying we made an agreement, but now we don't have to live up to it. Is that right? No, Your Honor. There was a plea agreement and there was a separate stipulation. By the terms of the stipulation, Dr. Polukhin agreed to sell her home and put $421,000, which was the amount that the government was claiming was the proper amount of restitution, into an escrow account, which was done. Did she do that? Yes. At the same time, the plea agreement made clear that the defense was disputing the amount of restitution and was claiming that the restitution amount was zero. So the point was that there was a pool of money from which restitution could be paid if, in the terms of the stipulation, it was finally determined that restitution was due. The final determination is before this court, Your Honor. There is nothing in either the plea agreement or the stipulation that agrees to $421,000 as being the proper amount of restitution. To the contrary, it makes very clear that the restitution amount was disputed, nor is there anything in either of those documents giving up the right to appeal the restitution determination if it came out against the defendant's position, which was that the restitution amount was zero. The reason that the restitution amount was zero is that the kickbacks were not either the but-for cause of the losses to Medicare or Medicaid or the proximate cause of those losses. Let me stop you there because the sentencing transcript is peculiar because it never talks about restitution. It just recites a dollar amount at the end. Correct. The plea agreement, as I understand it, agreed that restitution could be based on an offense or an aspect of the offense that would not otherwise qualify under the Mandatory Victim Restitution Act. There was some kind of an extended basis for restitution in the plea agreement required, no doubt, to come to agreement. Then on page 29 of the sentencing transcript, the court said, well, having reviewed those sentencing submissions as well as having been the presiding judge in the case of the other fraudsters, I think I have a sufficient understanding of the scheme involved here, and I do view it as one of health care fraud rather than separate frauds of kickbacks, which was part of a health care fraud. Now, that finding is not appealed. That was the basis of the relevant conduct determination and the amount of 421,000 being fraud loss. Am I right so far? Yes. And that determination is not appealed? Correct. So my question becomes, what is the health care fraud other than the kickbacks that permit you to win the restitution appeal without appealing the relevant conduct determination? Your Honor, as this court has made clear in cases like Cheka, which is cited in our brief, the guideline determination of loss is a separate inquiry from the determination of restitution. And so while I agree that those findings that you just cited establish that for purposes of relevant conduct, which looks to a finding that she had reason to know what was going on with respect to the billing, that that is sufficient for purposes of relevant conduct. But it is not sufficient. It does not meet the standard under the VWPA, which is a separate and more narrow standard that there is no relevant... My point is, if the health care fraud finding is the kickback fraud, then how can you say that... And the health care fraud, there was the relevant conduct determination. I just don't see how you wiggle out from under the relevant conduct finding. Because there is no provision for reasonable foreseeability as being a basis for payment of restitution. Under the VWPA, the losses must be the direct and proximate result of the offense of conviction, which in this case is the kickbacks. Now... The timing of these events, the Rabishoff and Custer have a what, a 690,000 restitution penalty? Correct. Of which 421,000 is on appeal, of course, joint and several for your client. Now, what's the measurement of the 691? It's all of the billing fraud, which includes billing fraud that occurred for a year before the kickbacks... Does it start in June of 2011 or does it start earlier than that? It starts in 2011, I believe, around June, because for the first... That's when they did the powder capsule switch. Correct, exactly. So that's the opening of the window for restitution for them? For them, yes. Not the beginning of... Not the period when they were filling the truly compounding. Right, because those bills... The government thought that was phony, right? That's the broader fraud that's argued more than once in the sentencing transcript by the prosecutor. I believe that the government's view is that the fraud starts in June of 2011 because that's when the bills start to be misrepresented. What there was discussion, there was a fair amount of discussion about whether the transcriptions themselves were medically necessary. Or an unregistered drug, just because it's not true compounding. That was not... There certainly was discussion about that, but it was not... There were no charges relating to that. That's not what the reference to healthcare fraud by the district court that I just read. That's not to that broader theory of the case that the government kept pushing. My interpretation of that, when there is the reference to healthcare fraud, is a reference to the billing fraud by Best Aid Pharmacy. Your Honor, I'll reserve the... The billing being the not simply charging for a compounding drug when you could have done it with a generic or whatever how you... No. The fact that you were not truly compounding and therefore you should have paid... You should have charged for a generic... You should have charged for powders instead of... Right. It was still... I would say that it was still compounding, but the bills submitted to Medicare and Medicaid were themselves... Contained affirmative misrepresentations because they claimed that at least one drug used an individual dosage unit, a capsule, as opposed to all bulk powders, which caused the bills to be substantially inflated. I believe that was the healthcare fraud. Thank you, Your Honor. Okay. Please, the court. That preamble brings me to my question for you. Where in the world is the evidence-approximate cause here? In terms of the restitution? I understand but-for cause. If she hadn't written the prescriptions, it wouldn't have let the bad guys do the phony compounding and make a lot of money. But where's the proof that she was in on that? That she was in on the billing fraud as well? There's no direct evidence, but the circumstantial evidence was overwhelming and is not being challenged on appeal. In terms of the healthcare fraud, the billing fraud, this was Dr. Palookan's idea. The billing fraud is only saying I'm filling the prescription in one way when, in fact, I filled it another way. The district court's conclusion was that Dr. Palookan was intimately involved with the healthcare fraud, the billing fraud. This was her idea. She was trying to set up her own pharmacy to expand her. Her idea was to make money off of these creams. That's the only thing we have direct evidence of, but the court's conclusion- Okay, but where's the-tell me where to read the evidence that shows that she had any clue that Rubishaf had-it was too inconvenient to break up all these capsules. I'm just going to put powders in there instead. Dr. Palookan brought this idea to Minnesota from her residency in New York. There, there was similar fraud going on. What date? Oh, similar. In her residency, quite a while back. What she knew is that there was a lot of money to be made in this compounding scheme. She had that- Whether it was phony compounding or not, right? She knew there was more money to be made than was being made when it wasn't phony. The district court has no evidence of that. It's pervasive, but it's not on appeal, Your Honor. I'm not as-I don't have it as much at the tip of my hands. I think there has to be some substantial evidence of proximate cause that the government proved proximate. And there is. The district court cited to one piece, which is a very significant piece, where Dr. Palookan, throughout this kickback scheme-it is a kickback. It's not a bribe. It's a kickback. She knows something's going on that she wants a piece of. And she was, during this time, she and Rabichev were trying to set up their own pharmacy to get a bigger cut of that fraud. She knew, and she wrote to another pharmacist or pharmacy, trying to set up a pharmacy. This is, and she used all caps, a huge business. If you look at what she made, if it was legal, the kickback she received was more than Best Aid would have received with the legitimate payments. If you're going to set up your own pharmacy, and she did go very much into this, you need to at least have some idea where the profits are coming from. If they had stopped substituting easy powders for the more labor-intensive breaking down of caps, if they'd continued to do what they started to do in June, you know, before June 2011, the amount of money they'd still have been greater than the amount of the kickback. No, Medicare wouldn't, Medicaid wouldn't have paid anything, and Medicare would have paid less than $44,000. She's setting up her own pharmacy knowing that the profits are huge. And frankly, that's just not an issue for the very good reason that it doesn't make any sense. The district court made that finding, and it's not clearly erroneous. The facts as you've explained them to me don't make clear what you just said. I thought that before 2011, they were getting reimbursed. They had begun making these creams with a technique. During 2011, yes. Early. During, yes. Yeah, but before the substitution of the powders. Yes. They were getting the same reimbursement from Medicare and Medicaid when they were doing legitimate compounding? They were getting nothing back from Medicaid, and they were getting a small amount back from Medicare. That's why they stopped doing it that way, because it wasn't profitable. I thought this was just to save money. So where do I go to, in the record, where is it in the record that I would learn what you just said that I certainly didn't learn from the briefs? It wasn't in the briefs because it's not raised on appeal. It's in the PSR. The issue on appeal, Your Honor, is what does the language of the plea agreement say? The defendant's position- But your problem is you briefed it as though the plea agreement language decides the case. You didn't have an alternative argument that if the plea agreement language doesn't, then your facts are sufficient. That's not their claim. They say so explicitly in how they frame the issue as purely a legal one, under clear error and interpretation of the plea agreement. You're coming at me with something that they're not raising. I don't understand what you mean. My goodness, the proximate cause, that was the issue. When I got by your argument, your defense on the plea agreement, which I didn't think was very strong, and I went back to their argument on the merits, this is exactly where I've got. If you would indulge me to let me articulate the plea agreement argument, I think you'll see the distinction of what proximate cause argument they're making versus what the plea agreement allows and what the district court found. I don't know if you have the plea agreement in front of you, but it's at page 23, I believe, of my brief. Yeah, page 23. Well, 23 of the brief. The defendant's position requires the court to read into the plea agreement a limitation that's not there and to disregard a limitation that is there. In the first subsection, it says the court may order her to make restitution for amounts above and beyond those directly caused by the offensive conviction. The defendant would have you- Where are you reading from now? I'm sorry, this is at page 23 of my brief, where there's a block quote with the language for restitution is in bold. Do you have that, Your Honor? Yes. So toward the second half of that says, the court may order her to make restitution for amounts above and beyond those directly caused by the offense of conviction, period. The defendant would have you add to that a phrase that says, but not for anything beyond the kickback counts. That's not in the plea agreement. Then in the second part, which carries over to page 24, the last- No, but just to pause there, the only loss to the, I guess it's the Medicare insurers that's being restitution, is the billing fraud. It's a single fraud of healthcare fraud. The kickbacks are part and parcel, as the district court found, of the healthcare fraud. It could have been punishable without causing restitution loss. And the district court runs through relevant conduct in this broad healthcare fraud, and at the end says, oh, you owe 421. You owe in restitution what I found is fraud loss. I can address that, Your Honor. I was in the middle of a point, but I'll take what you said. This has bothered me frequently when the district courts do this. The district court did nothing wrong. The legal question, and the district court knew it, the parties briefed it this way, the legal question was different. One is the amount of loss under the guidelines. The second is restitution loss that was only payable for the healthcare fraud conspiracy. It's not even available for the kickback scheme. Well, just to take an obvious example, the manufacture and sale of an adulterated or misbranded or unlicensed drug is probably going to be criminally punishable under the United States Code, but it's not going to cause monetary loss to specific victims. You know, Your Honor, I'm not getting to complete my thought, and I wish I could go back and complete the thought I was just in the midst of, which is that although those are different legal questions as to the guidelines and restitution, the fact question was the same. It came down to the same thing, which is, was the defendant involved in the healthcare fraud as a whole? The court held that it was, and that disposed of the same legal, different legal question, but the same fact question as to restitution. And in the sentencing transcript you see at page 36, defense counsel basically concedes that. She's arguing for a lower sentence in part because as you found restitution, nobody has to debate what the restitution amount is at that point, because everyone in the district court understood that restitution turned on the same legal question as loss amount. Was Dr. Palookan involved in the healthcare fraud? Now, if I can go back to my interpretation of the plea agreement, the defendant's argument is that it's only limited to kickbacks, and there would be no restitution available. Why would we enter a plea agreement like that? That's absurd. Then they also have to read out of this the last part, which says the government needs to establish amounts as compensable under the applicable restitution statutes. It's compensable under the healthcare fraud conspiracy, exactly as the defendant recognized at page 23 of their sentencing position, document number 51, as the probation office found in paragraph 109, and as the district court adopted. Everybody in the district court, I'm sorry, I'm out of time. Everyone in the district court understood that the restitution was based on the healthcare fraud, and that's the way they wrote that plea agreement. And it's clear because there's no other interpretation of the plea agreement that's possible because the defendant's argument is that we'd have to get restitution based on kickback counts under Title 42, which is not possible. It's not compensable under the relevant restitution statutes. The problem is, if you're right as to the understanding, then fraud loss facts will be, include intended loss, include a lot of things other than actual monetary- Yeah, but this was an actual loss case, Your Honor. And we did subtract, I mean, everyone understood that for restitution, although the actual loss by the judge was the entire amount. Restitution, she subtracted off the cost, the $40,000. I'm sorry, and I think I misspoke about the early June cost. I think I was wrong about that. The $40,000 number I had in my mind was the cost to the- That's the kickback. What's that? That's the amount of the kickback. $44,000, but the cost of, no, the amount that they would have paid, they would have paid anyway for this $40,000. And so for restitution, the district court subtracted the $40,000 off of the 467 and awarded 427. Now, when you say the judge found that she was involved in the healthcare fraud- As explicitly as she possibly could. Now, does there have to be a separate finding about proximate causation on the restitution amount that's different from- Making a proximate causation as to the loss for determining the amount of loss, so it's the same determination. Wait, I want to understand that. You say it's the same determination- For proximate cause. You mean, you think proximate cause is required for the guideline loss amount? You have, in order to find actual loss caused as part of reasonably foreseeable, yes, there has to be something that the healthcare fraud does to cause the loss. That's what it's based on. It's the same finding. The factual finding was the same for the amount of loss and for the restitution. Well, that's what I want to understand, whether the judge was conflating two different things, or you think that both require a finding of proximate causation, and so she could make it all in one finding. She could. Everybody in the district court understood that, and I don't think you're giving the district court enough credit if you think that she just forgot about it. You're not giving defense counsel enough credit, because they recognized that at page 36 of the transcript. Once she ruled on the reasonably foreseeable- Once she ruled that Dr. Palookan was part of the healthcare fraud, that resolved the restitution dispute as well. And on the basis of those findings, the district court ordered her to pay $421,000 in restitution to the government. It was her own finding that is not challenged. I know that there's a lot about proximate cause here, but there's no challenge that the defendant's conduct in the healthcare fraud was the proximate cause of the loss. It depends on this absurd argument that the restitution could only be made based on the kickback counts, and there's no reading of the plea agreement that will get you there. I'll give you a couple minutes. Thank you, Your Honor. Your Honor, Mr. Cheever was not the prosecutor in the court below, and I'm afraid that he has seriously mischaracterized the record below and what's not in the record. The government talks at length about what everyone understood the plea agreement to mean, but I negotiated this plea agreement and what everyone understood is the disagreement as to restitution is the exact same issue that is before this court. Namely, whether the losses attributable to the billing fraud are properly attributable to Dr. Palookan by way of restitution. That was the reason that we reserved the right to challenge restitution. Paragraph three explains we agree on the numbers. We disagree about what the numbers mean. It was never under Huey and under the Victim Witness Protection Act, the court may not simply treat a conviction for kickbacks as if it was a conspiracy to commit healthcare fraud. Relevant conduct is a relevant consideration with respect to guideline calculations, but not with respect to restitution. You paid $421,000 or agreed to pay that, and now you say, well, the kickbacks were $43,000, so that's all she should owe. That's what you're telling us now? Well, in fact, my position is that the restitution amount, which looks not to the gain to the defendant, but to the loss to Medicare and Medicaid is zero. So what we agreed to do was eliminate the risk of non-collection. We agreed to put money in escrow until the issue was finally determined. We did not concede that that amount was payable. We agreed, here it is, if it is payable, and we are asking the court to make that determination. And we made very clear in the plea agreement that we were disputing. Yeah, didn't the judge find against you on that? When the judge found that the two schemes really were interrelated and that she... Substantially involved in health care fraud. For purposes of the guidelines. But under Huey, the court cannot say, although she pled guilty to a kickback, we are going to treat it as if it is health care fraud. Well, but you agreed, you did agree in the plea agreement that the restitution could be for matters beyond the offense of conviction. Because she pleaded guilty to a single substantive count for $660 kickback, which amounted to 33 prescriptions. And so the government, under Huey, the government would be limited to restitution for that $660 kickback. We were all agreeing that that was untenable. So we agreed that the court could consider all of the kickbacks. Well, it doesn't say that. It says it can go beyond the offense of conviction. It doesn't say it can go only to kickback. It can go beyond the offense of conviction if the court determines that the court has established such amounts as compensable under the restitution statutes, which means has proven that they are directly and proximately caused by the kickbacks. So you want us to remand it to the district court for some more findings? Well, on the government's position as to the interpretation of this plea agreement, our argument in the district court would have been precluded if we, in fact, were agreeing that the health care fraud is included in the amounts to be considered by way of restitution. Yet the government never raised that issue because, contrary to what Mr. Cheever is saying, everyone understood in the district court that we were disputing the effect of the health care fraud on restitution, but we were agreeing that the full $43,000 in kickbacks were to be considered for purposes of restitution. But I don't understand where you get out of that plea agreement language that the limitation was to kickbacks. I agree that there is an ambiguity, which, had the government raised it, would have been resolved in the district court, and I believe that the intent of the parties would have been made clear that it's exactly what I'm saying. Well, you could have raised it. You're the one who's objecting to the restitution award. Why didn't you say to the judge, this violates our agreement? No one ever claimed in the district court. I'm not saying that the court's decision violated the plea agreement, the government was making that the court had to... You just said that any restitution based on the health care fraud violates our agreement because we agreed to limit it to the kickback. I may have misspoken, Your Honor. What I mean is the government was taking the position that the health care fraud counts for restitution. We were taking the position that it didn't. Whoever wins, that issue is resolved by a determination of whether the health care fraud, whether the losses incurred by Medicare and Medicaid were the direct and proximate result of the kickbacks. The government was taking... Or of health care. Of all her misconduct that they could... Health care fraud. Yeah. Yeah. Counts. I think the point I got out of your brief is that they didn't show that she had knowledge, for example, of the switch to the powders because that would generate... Well, that's true as well, Your Honor, and that would be an alternate basis for our position. That was your main position. And in response to the court's questions about where you could find that in the record, about when they made that switch, and I don't believe that Mr. Cheever gave an accurate account of the chronology, but at page three and four of the appellant's brief in the fact statement, there is a clear recitation of how the billing fraud began in June of 2011 because of the labor-intensive nature of opening the capsules, and there is annotation to the record. And was... But opposing counsel says this morning that Medicare was not paying during the capsule era. That's wrong. They were paying. I thought that they were paying for the expensive, the compounded. They were. Before June 11, and Custer and Rabishov didn't like the cost, the extra cost. Medicare and Medicaid were always getting exactly what they were paying for. The only difference was, unbeknownst to Medicare and Medicaid, as of June of 2011, Best Aid Pharmacy's costs went down. Wasn't doing what they were representing. Exactly. And being paid for it. And if it seems to me that under the plea agreement, if Ms. Palookan had been in on the switch, then this restitution order would be perfectly sound. And then I thought you were saying there's no showing that the kickbacks, beginning to receive the kickbacks, was in consideration, or a part of her being aware of the billing fraud switch. That is our position, Your Honor. But I would go further and say that even if the court were to accept that she knew about the billing fraud, and while that may be sufficient for relevant conduct, it is not sufficient for restitution. Because restitution turns on the loss, which is directly and proximately caused by the offense of conviction. It doesn't go further than that. That's Huey. But you agreed that it could go beyond the offense of conviction. Now you're trying to say, well, it could only go beyond the offense of conviction as to certain other kickback offenses. I agree that there is an ambiguity in the plea agreement. What's the ambiguity? It's an ambiguity that, there is an ambiguity because it's clear in the plea agreement that we are reserving the right to dispute the amount of restitution. And if we're agreeing that it includes the health, that the restitution should include the healthcare fraud, then there is nothing left to dispute. Well, I thought you were disputing whether she was involved in the healthcare fraud. That was your dispute. And you lost that factual argument. So then you lost the restitution amount. That's another way to look at it. This restitution language is standard language that occurs in any plea agreement where a defendant pleads guilty to a single substantive count and the relevant conduct of the loss is broader. And this was a provision that was drafted by the government. The reason that the government never raised in the district court that we had already accepted that the healthcare fraud was part of restitution is that was never the understanding of the parties. Would our record permissibly include the sentencing record as to the other two guys to see what the basis, what the showing for the larger restitution orders against them are? I guess the 690,000, that had already been ordered at this time, at the time of this sentencing, right? Yes. Because everybody knew that her 420 was gonna be... So how do we know, if you're right on your broader, your broadening of my understanding of the proximate cause issue, then her sentencing, the sentencings of the other two rascals should also have been vulnerable. And do we have the sentencing records? Can we, is it permissible to look at their sentencing records? In the addendum to the brief, I know there are excerpts from the plea transcripts of those two defendants. I don't recall, I don't believe that the sentencing transcript is part of the record. I also don't believe, this is from memory, that there is any discussion of the restitution amount at their sentencings. They were both cooperating defendants and I think there was an agreement as to the restitution amount. So I don't think there was any... They're destitute or what? What? Is that because they're destitute? Well, it was... I think they are destitute, but... This is the deep pocket in other words? Exactly, Your Honor. Thank you, Your Honor. Counsel. May I address that last point just briefly to help the court? Yeah. I do believe the court can address, can review, defendants said so in their brief, the government said so in its brief that the court can look at the Rabichev and Custer cases. The sentencing records. Yes. I wanted to correct that statement. I think the 690,000 comes... The additional money comes from a second person who was receiving kickbacks in addition to Dr. Palookan. Thank you, counsel. Well briefed and argued, complicated. Argument is... I think it's helped. Maybe it's made it worse. But we'll take it under... Not because you're... Because it exposed my ignorance. I didn't mean that you'd done it poorly. We'll take it under advisement.